**HUBBARD et al. v. JONES & LAUGHLIN STEEL CORPORATION.**

Civil Action No. 1497.

District Court, W. D. Pennsylvania.

Dec. 19, 1941.

Bennett Rodgers, of Pittsburgh, Pa., and Arthur Garfield Hays, Alan S. Hays, and Seymour M. Heilbron, all of New York City, for plaintiff.

H. Eastman Hackney, Elder W. Marshall, J. J. Heard, and Reed, Smith, Shaw & McClay, all of Pittsburgh, Pa., for defendant.

## SCHOONMAKER, District Judge.

Bertha H. Hubbard and Norman Johnson, stockholders of the defendant corporation, each owning fifty shares of defendant's preferred stock, originally brought this suit to enjoin the defendant from holding a stockholders' meeting to vote upon a proposed merger of defendant with two of its wholly-owned subsidiaries, i. e., the Vesta Coal Company and Shannopin Coal Company, on the ground that the recapitalization proposed in the merger was unfair, inequitable, and unlawful. The corporations involved are all Pennsylvania corporations. The plaintiffs made a motion for a preliminary injunction, which, upon hearing, was denied. Thereupon, the corporate election was held, and the requisite statutory majority voted in favor of the merger.

On July 26, 1941, Articles of Merger of said corporations were filed with the Pennsylvania State Department, and said Department issued a certificate of merger. Thereupon plaintiffs filed an amendment to their complaint, in which they asked that the said merger and the recapitalization affected thereby, be declared null and void; or, in event it be declared valid and lawful, that plaintiffs receive payment for their shares of stock in accordance with Section 908 of the Business Corporation Act of Pennsylvania, 15 P.S.Pa. § 2852—908.

On October 29, 1941, during the trial of this case, twenty-two other persons, owning 2,361 shares of the preferred stock of defendant, intervened as parties-plaintiff. The defendant answered, denying the alleged illegality of the merger. The case was then heard on complaint, answer and proofs.

The facts of the case as to the merger are briefly these: On June 10, 1941, the defendant proposed to its stockholders a plan of merger with two wholly-owned subsidiary corporations; i. e., Vesta Coal Company and Shannopin Coal Company. At this time defendant had outstanding 587,136 shares of preferred stock, and 572,320 shares of common stock. The preferred stock had a par value of one hundred dollars per share. It was entitled to cumulative dividends at the rate of $7 per share. Upon dissolution, voluntary or involuntary, defendant was required to pay $100 per share and accrued dividends, before distribution of any assets to common stockholders. The preferred stock was redeemable in whole at $120 per share, plus accrued dividends. As of April 1, 1941, dividends had accumulated on this preferred stock to the amount of $45.75 per share. At this time the outstanding stock of the Vesta Coal Company was $7,500,000, and that of the Shannopin Coal Company was $250,000.

Under the plan proposed, the Vesta Coal Company and the Shannopin Coal Company were to merge into the defendant Company as the surviving corporation. At the corporate meetings of the three corporations, the requisite statutory majority of stockholders voted in favor of the merger. Of the total outstanding preferred stock of defendant, 80% voted in favor of the merger, and 6.2% against it. Of the total preferred stock represented at the meeting, 93% voted in favor of the merger. As to the common stock, 87% of the outstanding stock voted in favor, and 1.6% voted against the merger. Thereupon, the defendant, as the only shareholder of the Vesta Coal Company and the Shannopin Coal Company, voted the entire stock of each of said corpora-

tions in favor of the merger. Articles of Merger were then filed with the Pennsylvania State Department as above stated.

The plan of merger provided for a change in the capital structure of defendant corporation, in that thereafter 3,087,136 shares of capital stock were authorized so classified that 587,136 shares were to be 5% cumulative stock of the par value of $100 per share; and the remaining 2,500,000 shares were to be common stock without par value. The new preferred stock was to be divided into two series, A and B; each to consist of 293,568 shares. These two series were to be identical and without distinction, except that Series B stock was convertible into common stock.

Under the plan, each old preferred share (including accrued but unpaid dividends) was to be converted into and exchangeable for one-half share of new preferred stock Series A, one-half share of new convertible preferred stock Series B, and one and one-quarter shares of new common stock without par value. Likewise, each share of the old common stock of the par value of $100 per share was to be converted into one share of common stock without par value.

On August 12, 1941, defendant corporation declared a dividend of $1.25 on the new preferred stock, payable October 1, 1941, and a dividend of 60¢ per share on the new common stock, payable October 6, 1941. Thereupon, the original plaintiffs asked this court for a preliminary injunction against the payment of these dividends. This court, after hearing, denied the application so far as concerned the preferred stock, but did preliminarily enjoin the defendant from paying the dividend declared on the common stock, the injunction to remain in force until final determination of this case.

On October 16, 1941, the original and intervening plaintiffs filed a petition in equity in the Court of Common Pleas of Allegheny County, Pennsylvania, asking for an appraisal of the fair value of their preferred shares.

The merger proceedings involved in this case were had under the provisions of Article IX of the Pennsylvania Business Corporation Act of May 5, 1933, P.L. 364, 15 P.S.Pa. § 2852—901 et seq., and its amendments. The corporations involved in the merger complied with that Act in the proceedings prescribed. The requisite majority of the stockholders of the cor-

porations, both common and preferred, authorized the merger. The plaintiffs contend, however, that the Act does not apply to a merger of a corporation with a wholly-owned subsidiary corporation.

■ With this contention we cannot agree. The Act contains no such limitation. Section 901 of the Pennsylvania Act provides: "Any two or more domestic business corporations, * * * may, in the manner hereinafter provided in this article, be merged into one of such domestic business corporations, hereinafter designated as the surviving corporation, * * *." This language is plain. There are no exceptions in the Act. Certainly we cannot hold that this statute excludes a merger between a corporation and its wholly-owned subsidiary, without writing into the statute something that is not there. Judicial determination cannot go that far.

The Circuit Court of Appeals of this Circuit has upheld a transaction whereby subsidiary corporations transferred their franchises and assets to a parent corporation as a "merger" under the Pennsylvania merger statute: See Metropolitan Edison Co. v. Commissioner of Internal Revenue, 98 F.2d 807; affirmed 306 U.S. 522, 59 S.Ct. 634, 83 L.Ed. 957.

In Delaware, where Section 59 of the General Corporation Law, Sec. 2091, Rev. Code 1935, provides that "Any two or more corporations * * * may consolidate or merge into a single corporation," the Supreme Court of Delaware, in the case of Federal United Corporation v. Havender, 11 A.2d 331, 337, held the merger of a parent corporation with a wholly-owned subsidiary was within the purview of this statute.

Our conclusion is, therefore, that the merger in the instant case is within the provisions of the Pennsylvania statute and is valid.

The next position taken by plaintiffs is that even if the merger is valid, the recapitalization is unfair and unlawful, because it deprives the plaintiffs of their right to payment in cash of their accumulated dividends. With this contention we cannot agree. Section 902 of the Business Corporation Act of 1933 provides that the plan shall set forth the terms and conditions of the merger, the mode of carrying the same into effect, the manner and basis of carrying the same into effect, the man-

ner and basis of converting the shares of each corporation into shares or other securities or obligations of the surviving or new corporation, and such other details and provisions as are deemed necessary. In this respect, the merger statute now in force does not materially differ from the merger statute in effect when the corporation was organized in 1922, i. e., the Act of May 3, 1909, 15 P.S. §§ 421, 425, which provided that the plan of merger shall set forth the manner and basis of converting the shares of each corporation into stock of the new corporation.

■ It is elementary law that the statutory provisions as to merger are written into every corporate charter. Every one who buys shares in a corporation is charged with notice of the statutory provisions as to merger with another corporation. See Federal United Corporation v. Havender, Del.Sup., 11 A.2d 331, 338.

■ Under the plan in the instant case, each preferred share (including accrued but unpaid dividends) was to be converted into, and exchangeable for one-half share of new preferred stock Series A, one-half share of new preferred stock Series B, and one and one-quarter shares of new common stock. It is our opinion that in a merger, preferred stock with its arrearages, may be legally converted into other securities, if the requisite number of shares thereof is voted in favor of such conversion. Where that is done, as in the instant case, the merger agreement may lawfully provide the terms on which the corporation's stock may be issued. Preferred stock has only such preferences or priorities as are expressly given to it under the corporate charter. In the instant case, it is merely provided that the preferred dividends "shall be paid or set apart for payment before any dividends on any other stock of the corporation shall be paid or set apart." There is no covenant to pay accumulated dividends on such stock in cash before a merger may take place. A contract of merger which provides for a conversion of shares of stock of merging corporations, and all rights appertaining thereto, is authorized by statute, and is not the taking of property without the due process of law. A dissatisfied shareholder can always secure the fair value of his shares under the provisions of Section 908 of the merger statute by petition to the Court of Common Pleas, in equity, within the

county in which surviving corporation has its registered office, to have the fair value of his shares appraised. If that award is not paid, provision is made for judgment against the surviving corporation for the amount of such appraised fair value. By Pennsylvania Act of March 31, 1941, amending Section 908 of the Merger Statute, the remedy by appraisal is the only remedy the plaintiffs have in the instant case. The Act of 1941 adds the following clause to Section 908 of the Merger Statutes: "The rights and remedies at law or in equity of any shareholder who desires to object to, or to dissent from, any merger or consolidation shall be limited to those prescribed under this section, and such rights and remedies under this section shall be exclusive." Subd. C.

It is our opinion, therefore, that merger in the instant case was valid, and that the plaintiffs' only remedy is that afforded by the statutory appraisal proceedings.

This view is supported by the following cases: Beechwood Securities Corp. v. Associated Oil Co., 9 Cir., 104 F.2d 537; Windhurst v. Central Leather Co., 101 N.J.Eq. 543, 138 A. 772; Id., 105 N.J.Eq. 621, 149 A. 36; Id., 107 N.J.Eq. 528, 153 A. 402; MacFarlane v. North American Cement Corp., 16 Del.Ch. 172, 157 A. 396; Federal United Corporation v. Havender, Del.Sup., 11 A.2d 331.

■ As to the contention of the plaintiffs that the plan of merger should be invalidated because it is unfair, we cannot find that it is unfair. The financial history of the defendant, as shown by the evidence, indicates that from its organization in 1922 to December 31, 1930, the Company was prosperous, earning substantial profits and paying each year the preferred dividends in full. The total net profits during this period, after payment of $32,000,000 preferred dividends, was $69,000,000, of which $16,000,000 was distributed in common stock dividends, and the balance retained in the business. In the next ten years, however, conditions changed. The corporation lost money in six of these years; its operations were way below its operating capacity; and it had a net loss of $300,000 not including payments on preferred dividends. On December 31, 1940, the arrears on accumulated preferred dividends amounted to $45 per share, or $26,421,255. During the last half of 1936, and the first half of 1937, business began to improve; and the Company was faced with the problem of

436

paying off or funding the dividend arrears. It made a study of the problem, securing advice from the Mellon Securities Corporation and of others, including the Metropolitan Life Insurance Company; Moody's; Morgan, Stanley & Company, Inc.; National City Bank; and Standard Statistics Corporation. The Company then proposed the plan here under consideration, which was carefully weighed and studied, and which was approved by the requisite majority of all the stockholders of the corporations involved. We cannot say the plan is unfair, just because it does not provide for the payment in cash of the deferred dividends.

The plaintiffs contend the plan confiscates their vested rights to have the preferred dividends paid in cash. With this contention we cannot agree, because the plaintiffs have adequate protection in the Pennsylvania appraisal statute. The remedy afforded by that statute is exclusive.

The plaintiffs further contend that at least nothing has occurred to disturb the position of the preferred stockholders; that therefore the stock of the dissenting preferred stockholders should be left outstanding and unimpaired as the senior stock issue of the Company. The answer to that proposition is that there is no statutory provision for that kind of a merger, and that this court would have no authority to set up by court decree a superior preferred stock for any corporation.

We therefore conclude that the complaint in this case should be dismissed. Findings of fact and conclusions of law in accordance with this opinion may be submitted by defendant's counsel on notice to opposing counsel.