412 A.2d 1099

## In re JONES & LAUGHLIN STEEL CORPORATION.

**Appeal of Mr. and Mrs. Walter BARCHESKI, James D'Antonio, Harold B. Dally, Robert J. Donovan, William H. Ehrgott, Mr. and Mrs. Bert D. Peterson, Dr. and Mrs. Edward N. Peterson, Paul J. Piccirilli and Alexander H. Scott.**

Supreme Court of Pennsylvania.

Argued Dec. 10, 1979.

Decided March 20, 1980.

Larsen, J., dissented and filed opinion, in which Flaherty, J., joined.

526

Allen H. Berkman, John P. Edgar, Pittsburgh, for appellant.

Gilbert J. Helwig, Edward Hoopes, Joseph F. McDonough, Pittsburgh, for appellee.

Before EAGEN, C. J., and O'BRIEN, ROBERTS, NIX, LARSEN and FLAHERTY, JJ.

## OPINION

NIX, Justice.

Appellants, minority stockholders in the Jones & Laughlin Steel Corporation (J & L), sought to challenge the validity of a 1974 merger through which J & L "went private" and deprived them of equitable interest in J & L. The Superior

Court ruled that appellants' sole post-merger remedy is the statutory appraisal proceeding of § 515 of the Business Corporation Law (BCL),[1] and reversed the determination of the Court of Common Pleas to the effect that it had jurisdiction in a § 515 proceeding to consider the validity of the merger. 263 Pa.Super. 378, 398 A.2d 186 (1979). We affirm.

A thorough recitation of the facts is given in the opinion of the Superior Court. The following summary will suffice for the present discussion. In 1974, J & L was controlled by the L.T.V. Corporation (LTV). LTV owned 100 percent of Jones & Laughlin Industries, Inc. (JLI), which in turn owned 81 percent of the common stock of J & L. In the fall of 1974, the directors of LTV decided that it was in LTV's best interests to eliminate the minority interest in J & L and acquire all of its outstanding shares.[2] LTV accomplished this goal by creating the undercapitalized[3] shell Jones & Laughlin Industries, Inc. II (JLI–II) as a wholly-owned

---

1. Act of May 5, 1933, P.L. 364, art. V, § 515; *as amended* 15 P.S. § 1515.

2. The proxy statement dated October 25, 1974, sent by the J & L board of directors to all J & L shareholders states this fact explicitly:

> Early in 1972, the management and directors of LTV concluded that LTV should, in the interests of its stockholders, primarily place greater emphasis, during the foreseeable future on the operations of its subsidiaries. To achieve that objective, the management and directors of LTV determined that LTV should function as an operating organization, with more direct control over subsidiary operations. This represented a change in the fundamental management philosophy of LTV and was based upon the conclusion that its existing operating structure placed inhibitions on its corporate growth and flexibility, resulting from corporate and legal considerations, rather than from business and competitive considerations. . . . While the acquisition by JLI of 100% of the Common Stock of J & L Steel pursuant to the merger is not intended to result in any change in the management, capital structure or business of J & L Steel, it will, in the opinion of LTV remove the above-mentioned inhibitions of LTV insofar as J & L Steel is concerned. Accordingly, a principal purpose of LTV in the Merger is to acquire the minority interest in a fair and equitable manner. Such shareholders will not receive in the Merger any securities of J & L Steel, as the surviving corporation, or any securities of LTV or JLI. Proxy Statement at 7.

3. JLI–II had capital of only $1,000.00, while J & L had a book value of $811,566,000.00.

subsidiary of LTV, and merging it with J & L. The common shareholders of J & L received $29 per share in exchange for their stock. A proxy statement concerning the merger was sent to J & L shareholders in October 1974, and following majority approval by J & L's board of directors and stockholders, the merger was consummated on November 22, 1974.[4]

Two separate groups of J & L shareholders objected to the merger. Prior to the merger's consummation, one group filed a class action in the United States District Court for the Southern District of New York seeking to enjoin the merger from occurring, and claiming violations of §§ 10(b) and 14(a) of the Securities Exchange Act of 1934, 15 U.S.C. §§ 78j(b) & 78n(a). The court refused to grant the requested injunction, *Tanzer Economic Associates, Inc. v. Haynie,* 388 F.Supp. 365 (S.D.N.Y.1974), but later refused to dismiss the complaint seeking damages, 405 F.Supp. 650 (S.D.N.Y. 1976).

The second group, the present appellants, did not act to prevent the merger except to dissent to the merger at the shareholders' meeting, thereby perfecting their rights as dissenting shareholders under § 515 of the BCL. When appellants persisted in their refusal to accept the offered price of $29 per share for their stock, J & L filed a petition in the Court of Common Pleas of Allegheny County seeking an appraisal and forced sale, pursuant to § 515 F, 15 P.S. § 1515 F, of the shares held by the dissenters. Appellants filed answers to this petition and alleged as "new matter" that the merger was unlawful because its sole purpose was

4. The following diagram illustrates the process:

Before the merger            After the merger

to eliminate all public minority shareholders of J & L and that the fair value of their shares was in excess of $29 per share. Appellants requested the court to invalidate the merger, or alternatively, to assess damages against J & L or to fix a fair value for their shares.

J & L replied to the new matter by attacking the jurisdiction of the court of common pleas to consider the validity of the merger in the appraisal proceeding. Appellants argued that the court did have jurisdiction on the theory that the appraisal action could not proceed unless the appraisal court first determined that there had been a valid merger. The court agreed with appellants and scheduled a hearing limited to the issue of whether there had been a valid merger. Prior to this hearing, J & L appealed to the Superior Court [5] claiming the appraisal court lacked jurisdiction to determine the validity of the merger. The Superior Court held that a § 515 appraisal court is without jurisdiction to inquire into the validity of the challenged merger. We granted review pursuant to 42 Pa.C.S.A. § 724 (1979 Pamphlet).

The test we must employ in determining the jurisdiction of a court over a given subject matter has oft been stated:

> The test of jurisdiction is the competency of the court to hear and determine controversies of the general class to which the case presented for consideration belongs. The question is whether the court has power to enter into the inquiry and not whether it is able to grant the relief sought in the particular case.

*Cooper-Bessemer Co. v. Ambrosia Coal & Constr. Co.,* 447 Pa. 521, 524, 291 A.2d 99, 100 (1972) *quoting from Jones Mem. Bapt. Ch. v. Brackeen,* 416 Pa. 599, 602, 207 A.2d 861, 863 (1965); *see also Whitney v. Lebanon City,* 369 Pa. 308, 311–12, 85 A.2d 106 (1952). Although statutes purporting to limit a court's jurisdiction must be strictly construed, 1 Pa.C.S.A. § 1928(b)(7) (1979 Pamphlet), we must give full

5. Act of March 5, 1925, P.L. 23, § 1; 12 P.S. § 672.

effect to such a limitation if that is the legislature's clear intent, *id.,* § 1921.

The crucial question is whether the legislature intended the § 515 fair value appraisal to be the exclusive post-merger remedy available to dissenting shareholders.[6] Section 515 K expressly limits the remedies available to dissenting shareholders:

> K. Any shareholder, who desires to object to, or to dissent from, any proposed plan authorized under any section of this act, and where this act provides that shareholders so objecting or dissenting shall have the rights and remedies herein provided, shall be limited to the rights and remedies prescribed under this section, and the rights and remedies prescribed by this section shall be exclusive.

15 P.S. § 1515 K.

The "rights and remedies prescribed under this section" are the rights of the dissenting shareholders to demand an appraisal of the fair value of their stock and its purchase at that price by the corporation. On its face, the exclusive remedy provided dissenting shareholders does not include the right to challenge the validity of the merger in the appraisal proceeding.

■ Appellants argue that the § 515 appraisal is their exclusive remedy only when the merger is "authorized" by Pennsylvania corporations law. They contend that our law does not authorize mergers whose sole purpose is to defraud minority shareholders of their equitable ownership of the corporation, or where the merger was effectuated through a breach of the fiduciary duty owed to the minority sharehold-

---

**6.** The rights given shareholders who dissent from a contested merger or consolidation are set forth in § 908 of the BCL, *as amended* 15 P.S. § 1908 (Supp.1978–80), which states:

§ 1908. Rights of dissenting shareholders

A. If any shareholder of a domestic corporation which becomes a party to a plan of merger or consolidation shall object to such plan of merger or consolidation and shall comply with the provisions of section 515 of this act, such shareholders shall be entitled to the rights and remedies of dissenting shareholders therein provided if any.

ers. Although Pennsylvania and other jurisdictions[7] have held that "a freezing out of minority holders with the purpose of continuing the business for the benefit of the majority holders," *Weisbecker v. Hosiery Patents, Inc.,* 356 Pa. 244, 252, 51 A.2d 811, 814 (1947), is a violation of the fiduciary duty owed to minority shareholders by the majority shareholders, *id.,* at 250–51, 51 A.2d 811, this is insufficient to confer jurisdiction upon an *appraisal court* acting pursuant to § 515 F to determine the validity of the transaction. These cases merely recognize the equitable power of a court of common pleas in an appropriate proceeding, to enjoin the unfair use of power by the majority stockholders for their selfish interest to the detriment of the minority stockholders. *Weisbecker v. Hosiery Patents, Inc. supra.* They do not support the proposition that such equitable power may be exercised in a proceeding brought under § 515 after the consummation of the merger or consolidation.

We believe that the legislature intended "authorized" plans to simply mean those general corporate activities made permissible by the BCL. The cope of the court's inquiry in a § 515 proceeding is whether or not mergers are permissible under the BCL. In this regard, it is significant that the merger plan was filed with the Pennsylvania Department of State which awarded a certificate of merger pursuant to BCL § 905, *as amended* 15 P.S. § 1905 (Supp. 1979–80). Nor do appellants contend that any of the technical or procedural requirements for a merger have not been fully met by J & L.

Despite appellants' assertions, the dicta found in *Hubbard v. Jones & Laughlin Steel Corp.,* 42 F.Supp. 432 (W.D.Pa. 1941), and *Miller v. Steinbach,* 268 F.Supp. 255 (S.D.N.Y. 1967), are in no way conflicting with our holding in this case. We agree with the Superior Court's analysis on this point:

7. *See, e. g., Pepper v. Litton,* 308 U.S. 295, 311, 60 S.Ct. 238, 247, 84 L.Ed. 281 (1939); *Southern Pacific Co. v. Bogert,* 250 U.S. 483, 39 S.Ct. 533, 63 L.Ed. 1099 (1919); *Bryan v. Brock & Blevins Co., Inc.,* 490 F.2d 563 (5th Cir.), *cert. denied,* 419 U.S. 844, 95 S.Ct. 77, 42 L.Ed.2d 72 (1974); *Zahn v. Transamerica Corp.,* 162 F.2d 36 (3d Cir. 1947); *Roland International Corp. v. Najjar,* Del., 407 A.2d 1032 (1979) H. Henn, Law of Corporations § 240 (2d ed. 1970).

The issue in *Hubbard* was whether the Business Corporation Law authorized a recapitalization of preferred stock into a new series of preferred stock pursuant to a merger. Finding that it did, the court stated that the plan was valid—meaning authorized under the Business Corporation Law—and that appraisal was the only remedy. In this case by contrast, there has been no claim that a cash merger is not authorized; the [appellants] merely argue that they don't want to be bound by the merger. Their only remedy for this claim is the appraisal.

Neither does *Miller* . . . support the position of the [appellants]. In *Miller* the court's holding was merely that section 515K does not bar an action for fraud under the Federal Securities Laws.

263 Pa.Super. 391 n.13, 398 A.2d at 192 n.13.

Appellants further contend that unless it is permissible to contest the validity of the merger during the appraisal proceeding, it will be impossible to prevent fraudulent or unfair mergers from occurring. They argue that they "had two choices when confronted with the proposed 'freeze-out' merger; they could either do nothing or send written objections to J & L" and thereby perfect their rights under § 515. We do not agree.

The BCL was amended by the Act of July 20, 1968, P.L. 459, No. 216, § 3 E, 15 P.S. § 1005 E (Supp.1979–80), and implicitly recognizes the right of shareholders to seek an injunction to prevent any proposed corporate plan fraught with fraud or fundamental unfairness:

E. . . . a shareholder shall not have any right to obtain, in the absence of fraud or fundamental unfairness, an injunction against any proposed plan or amendment of articles authorized under any section of this act, or to claim the right to valuation of and payment for his shares because of any such plan or amendment except that he may dissent and claim payment if and to the extent provided in section 515 of this act where this act expressly provides that dissenting shareholders shall have the rights and remedies provided in section 515 of this act.

Even prior to this amendment, our cases recognized the right of shareholders to enjoin proposed unfair or fraudulent corporate actions. *See, e. g., Farris v. Glen Alden Corp.,* 393 Pa. 427, 143 A.2d 25 (1955) (attempted merger of two companies was enjoined where merger was structured so as to defraud dissenting shareholders of their right to an appraisal); *Weisbecker v. Hosiery Patents, Inc., supra* (majority shareholders enjoined from selling corporate assets to themselves for an inadequate price and in pursuance of a scheme to acquire the corporate assets for themselves or to otherwise benefit themselves to the detriment of the minority shareholders). In each case where this power was exercised it was in an action in equity instituted *prior* to the consummation of the proposed transaction. In the present case, appellants failed to take any action to prevent the merger despite the period of almost a full month in which they could have acted. Furthermore, appellants did not seek a rescission of the merger for at least three and one-half months following its consummation.

Appellants claim that they sat on their rights because of misleading statements in the proxy issued by J & L prior to the merger. The proxy stated in part that "Section 515 K provides that any shareholder who desires to object to, or to dissent from a proposed plan such as the Merger Agreement shall be limited to the rights and remedies prescribed in Section 515 and that the rights and remedies prescribed by Section 515 shall be exclusive." This is merely a restatement of § 515 K and obviously did not mislead the other dissatisfied shareholders who instituted an injunction action in a federal court. In addition, if appellants believed J & L to be acting fraudulently and unfairly, it would have been most unreasonable for them to have been content to rely upon J & L's statement of the remedies available to them.

We wish to emphasize that today's decision does not condone the manner in which appellants and other minority shareholders were deprived of their equitable interest in J & L. We are not unmindful of the grave unfairness and fraud frequently present in mergers of this type, especially where

there is a "cash-out" of the minority shareholders. *See* Brudney & Chirelstein, A Restatement of Corporate Freeze-outs, 84 Yale L.Rev. 1354, 1358–59, 1367–70 (1978). Our concern, however, does not change the view that appellants' post-merger remedies were limited to the appraisal of the fair value of their stock. Thus we must agree with the Superior Court's conclusion that the hearing court did not possess the power to determine the substantive fairness of the transaction.[8]

The order of the Superior Court is affirmed.

LARSEN, J., files a dissenting opinion in which FLAHER-TY, J., joins.

LARSEN, Justice, dissenting.

I dissent.

The Majority claims that it "does not condone the manner in which appellants and other minority stockholders were deprived of their equitable interest in J & L" and that it is "not unmindful of the grave unfairness and fraud frequently present in mergers of this type, especially where there is a 'cash-out' of the minority stockholders." Notwithstanding the Majority's alleged concern for minority stockholders, the Majority refuses to permit appellants' post-merger challenge to the validity of the instant merger, holding that appellants' "exclusive" post-merger remedy is "the right . . . to demand an appraisal of the fair value of their stock and its purchase at that price by the corporation." I dissent from this holding; stockholders who allege that a merger is "fraught with fraud or fundamental unfairness" should be permitted to challenge the validity of said merger *at any time,* including post-merger. In support thereof, I cite the opinion of the Delaware Supreme Court in *Roland International Corp. v. Najjar,* Del., 407 A.2d 1032 (1979), a case similar to the one at bar:

8. In view of our holding that the appraisal court lacked jurisdiction to consider the validity of the merger, we need not reach appellee's claims that there was a failure to join indispensable parties and that appellants are barred from contesting the validity of the merger by the doctrine of election of remedies.

[A] [fiduciary] duty is owed by the majority stockholders (who have the power to control corporate property, and indeed, corporate destiny) to the minority stockholders of the corporation when dealing with the latter's property. It may not be circumvented by full compliance with the procedures permitted under and required by the corporation statutes, *nor is it discharged by remitting minority shareholders to a statutory appraisal remedy* (often based upon the status of the market and the elements of an appraisal), the timing of which is entirely within the control of the majority. The fiduciary duty is violated when those who control a corporation's voting machinery use that power to "cash out" minority shareholders, that is, to exclude them from continued participation in the corporate life, for no reason other than to eliminate them. [Emphasis provided]

FLAHERTY, J., joins this dissenting opinion.