53 A.3d 39

**MITCHELL PARTNERS, L.P., Appellant**

v.

**IREX CORPORATION; North Lime Holdings Corp.; W. Kirk Liddell; David C. Kleinman; Paul Isaac; Joann M. Judge; Michael J. Lardner; John O. Shirk; Thomas W. Wolf; Lori A. Pickell; James E. Hipolit; Janee Pinkerton; Kenneth G. Stoudt; N. Thompson Washburn, Appellees.**

Supreme Court of Pennsylvania.

Argued May 9, 2012.

Decided July 24, 2012.

George Croner, Robert Joseph LaRocca, Christina Connie Donato Saler, Kohn, Swift & Graft, P.C., Philadelphia, for Mitchell Partners, L.P.

Marcia Mary Waldron, U.S. Court of Appeals, 3rd Circuit, for U.S. Court of Appeals for the Third Circuit.

Steven B. Feirson, Cheryl Ann Krause, Elisa Talora Wiygul, Dechert LLP, Philadelphia, for Irex Corporation et al.

BEFORE: CASTILLE, C.J., SAYLOR, EAKIN, BAER, TODD, McCAFFERY, ORIE MELVIN, JJ.

## *OPINION*

Justice SAYLOR.

We accepted certification from the United States Court of Appeals for the Third Circuit to address the exclusiveness of a statutory appraisal remedy provided, under Pennsylvania corporate law, to minority shareholders in certain merger scenarios.

Per Pennsylvania's Business Corporation Law,[1] a shareholder of a domestic business corporation may have prescribed entitlements—termed "dissenter's rights"—upon the shareholder's objection to the corporation's participation in a merger (or some other transactions entailing fundamental corporate

---

1. Act of Dec. 21, 1988, P.L. 1444, No. 177, § 103 (as amended 15 Pa.C.S. §§ 1101–4162) (the "BCL").

changes). *See* 15 Pa.C.S. § 1930(a). In certain of these scenarios, objecting shareholders are entitled to receive the fair value for their shares. *See id.* § 1571(a). Where there is a fair value dispute, the BCL provides for post-merger judicial valuation or appraisal of the shares. *See id.* § 1579(a). Furthermore, and of particular relevance to this appeal, the general provisions of the BCL impose the following constraint upon the rights of objecting and dissenting shareholders:

§ 1105. Restriction on equitable relief.

A shareholder of a business corporation shall not have any right to obtain, in the absence of fraud or fundamental unfairness, an injunction against any proposed plan or amendment of articles authorized under any provision of this subpart, nor any right to claim the right to valuation and payment of the fair value of his shares because of the plan or amendment, except that he may dissent and claim such payment if and to the extent provided in Subchapter D of Chapter 15[, 15 Pa.C.S. §§ 1571–1580,] (relating to dissenters rights) where this subpart expressly provides that dissenting shareholders shall have the rights and remedies provided in that subchapter. *Absent fraud or fundamental unfairness, the rights and remedies so provided shall be exclusive.* Structuring a plan or transaction for the purpose or with the effect of eliminating or avoiding the application of dissenters rights is not fraud or fundamental unfairness within the meaning of this section.

15 Pa.C.S. § 1105 (emphasis added).

Mitchell Partners, L.P., was a minority shareholder of Irex Corporation, a privately-held Pennsylvania business corporation. In 2006, Irex participated in a merger transaction structured so that some minority shareholders would be "cashed out" and would not receive an equity interest in the surviving corporation, a wholly owned subsidiary of North Lime Holdings Corporation.[2] Mitchell objected to the acquisi-

---

2. The primary business justification offered by Irex was the conferral of significant federal income tax benefits to participating shareholders through the conversion of Irex into an S-Corporation. *See* Brief for Appellees in *Mitchell Partners, L.P. v. Irex Corp.,* 656 F.3d 201 (3d

tion, as it viewed the transaction as a "squeeze out" of minority interests at an unfair price.[3] The merger proceeded nonetheless, and Irex commenced valuation proceedings in state court, per Section 1579 of the BCL, to address the dispute with Mitchell.

Meanwhile, Mitchell pursued common law remedies in a diversity action in federal court, naming as defendants Irex, its directors, most of its officers, and North Lime. The complaint asserted claims for breach of fiduciary duties, aiding and abetting breach of fiduciary duties, and unjust enrichment.[4] The defendants sought dismissal on the ground that, under Section 1105 of the BCL, judicial valuation is the sole remedy available to dissenting shareholders in the post-merger timeframe.

The district court agreed, relying on *In re Jones & Laughlin Steel Corporation*, 488 Pa. 524, 412 A.2d 1099 (1980) (holding that, under Section 1105's predecessor, an appraisal court lacks jurisdiction to determine the validity of a merger). The court believed that *Jones* confirmed that post-merger remedies available to dissenting shareholders are limited to appraisal in a judicial forum. *See Mitchell Partners, L.P. v. Irex Corp.*, Civil Action No. 08–cv–04814, *slip op.*, 2010 WL 3825719, at *12 (E.D.Pa., Sept. 29, 2010). In terms of policy

Cir.2011), at 5 ("In 2006, Irex developed a merger proposal to obtain the tax benefits of S–Corporation status, to create a smaller and more connected shareholder group, to provide greater incentives for managers and directors, and to cut down on shareholder administrative costs.").

3. A "squeeze out" has been broadly defined as any action taken by persons in control of a corporation resulting in the termination of a shareholder's interest, with the purpose of forcing a sale of the shareholder's stock. *See generally* Franklin A. Gevurtz, *Squeeze-outs and Freeze-outs in Limited Liability Companies*, 73 WASH. U.L.Q. 497, 498 (1995) (referring to such actions as "a sort of business eminent domain").

4. The asserted misconduct on the part of Irex insiders is detailed in an opinion rendered by the Third Circuit upon its review of the district court's decision, as further discussed below. *See Mitchell*, 656 F.3d at 205–07. Briefly, the alleged improprieties include: self-dealing; withholding of critical information and exertion of inappropriate influence over a special committee formed to address valuation issues; and omission of critical information from proxy statements. *See id.*

implications, the district court highlighted that the *Jones* Court "was not unmindful of the import of its decision and the limits it placed on minority shareholders." *Id.* at *5. In this regard, the court quoted from *Jones,* as follows:

> We wish to emphasize that today's decision does not condone the manner in which the appellants and other minority shareholders were deprived of their equitable interest.... We are not unmindful of the grave unfairness and fraud frequently present in mergers of this type, especially where there is a "cash-out" of the minority shareholders. Our concern, however, does not change the view that appellants' post-merger remedies were limited to the appraisal of the fair market value of their stock.

*Id.* at *5 n. 36 (quoting *Jones,* 488 Pa. at 533–34, 412 A.2d at 1104) (citations omitted). While the district court appreciated that several decisions of the Third Circuit Court of Appeals and of the Pennsylvania Superior Court sanctioned remedies beyond appraisal, *see, e.g., Herskowitz v. Nutri/System, Inc.,* 857 F.2d 179 (3d Cir.1988), *Warden v. McLelland,* 288 F.3d 105 (3d Cir.2002), and *In re Jones & Laughlin Steel Corp.,* 328 Pa.Super. 442, 477 A.2d 527 (1984), it distinguished these on the ground that they involved separate litigation that was filed *before* the consummation of merger transactions. *See Mitchell,* Civil Action No. 08–cv–04814, *slip op.,* 2010 WL 3825719, at *7.

On appeal, a divided three-judge panel of the Third Circuit reversed. *See Mitchell Partners, L.P. v. Irex Corp.,* 656 F.3d 201 (3d Cir.2011). Initially, the majority recognized that Section 1105 "clearly imposes some restrictions on the relief available to a dissenting shareholder outside of the appraisal remedy proceeding[.]" *Id.* at 209. The majority disagreed, however, with the district court's position that the statute precludes *all* other remedies. Acknowledging that some of the broader language from *Jones* supported the defendants' position, the majority nonetheless highlighted that *Jones* arose in the context of a statutory valuation proceeding, such that "the narrow issue of whether a suit for damages based on

breach of fiduciary duties may be brought post-merger was not directly presented to the Supreme Court." *Id.* at 212.

Absent a controlling Pennsylvania decision, the majority reviewed salient federal ones. It explained that, in *Herskowitz*, the Third Circuit previously had read *Jones'* rationale in light of the limited issue before this Court (namely, whether a post-merger equitable claim could be pursued in an appraisal proceeding), and had determined that common law claims asserted before the effectuation of a merger were not foreclosed under Section 1105. *See Mitchell*, 656 F.3d at 212–13 (discussing *Herskowitz*, 857 F.2d at 187). The majority predicted that this Court would essentially adopt the *Herskowitz* court's approach and extend it to post-merger scenarios. *See id.* at 213.

In support of its conclusion, the majority also observed that nothing in the appraisal statute itself distinguishes between pre- and post-merger relief. Furthermore, the court explained that the BCL's approach was intended to prevent a dissident group of shareholders from blocking a merger desired by majority shareholders. In the judgment of the Third Circuit, a post-merger damages action would not contravene this aim. *See Mitchell*, 656 F.3d at 213–14 ("Barring [post-merger suits] would do little more than insulate alleged tortfeasors from responsibility for their conduct, an outcome which the Court in *Jones* [ ] feared."). In this regard, the majority explained that other jurisdictions permit separate suits for fiduciary breaches, because even the expanded appraisal remedy "may not be adequate in certain cases, particularly where fraud, misrepresentation, self-dealing, deliberate waste of corporate assets, or gross and palpable overreaching are involved." *Id.* at 214 (quoting *Weinberger v. UOP, Inc.*, 457 A.2d 701, 714 (Del.1983)). In particular, the majority noted that Delaware courts have appreciated that the valuation remedy and suits for self-dealing "serve different purposes and are designed to provide different, and not interchangeable, remedies." *Id.* (quoting *Cede & Co. v. Technicolor, Inc.*, 542 A.2d 1182, 1186 (Del.1988)). Additionally, the majority expressed the

concern that, if exclusivity were the rule, a shareholder who was deceived by the majority into voting for a merger would have no remedy at all for the breach of fiduciary duty (since such a shareholder will have foregone an assertion of dissenter's rights). *See id.* at 214–15.

Finally, the majority highlighted that Section 1105 provides that when there is "fraud or fundamental unfairness" the valuation remedy is not exclusive. *See Mitchell,* 656 F.3d at 215 (citing 15 Pa.C.S. § 1105). The majority concluded:

> We predict that the Supreme Court of Pennsylvania would hold that Pennsylvania's appraisal statute does not exclude separate, post-merger suits for damages alleging that majority shareholders breached their fiduciary duties to minority shareholders in the process of consummating a freeze out merger.... As we held in *Herskowitz,* "it is a clear holding that in Pennsylvania the statutory appraisal cause of action coexists with common law causes of action. Indeed no other rule makes sense, for the appraisal remedy is available even absent misconduct of corporate officials. It was hardly enacted to provide a shield for misconduct."

*Mitchell,* 656 F.3d at 216 (quoting *Herskowitz,* 857 F.2d at 187).

Judge Garth dissented. Consistent with the reasoning of the district court, his opinion stressed the broader language of *Jones* signifying that the only post-merger remedy is the statutory valuation process. The dissent also drew support from *Herskowitz,* since the decision emphasized that *Jones* dealt with a post-merger scenario, whereas *Herskowitz* addressed a pre-merger lawsuit. *See id.* at 219 (Garth, J., dissenting) (quoting *Herskowitz,* 857 F.2d at 186–87).[5] Furthermore, the dissent developed that, in the wake of *Jones,* subsequent case law from the Third Circuit, the Pennsylvania Superior Court, and Pennsylvania common pleas courts have

---

5. In this regard, the dissent appears to have equated an equitable suit to challenge the validity of a merger (the subject of *Jones* ) with a claim for damages arising from an alleged breach of fiduciary duty (the primary subject of *Herskowitz* ). Reliance on *Herskowitz* to support such equation is very tenuous, since *Herskowitz* carefully distinguishes between the two scenarios. *See Herskowitz,* 857 F.2d at 186–87.

preserved such distinction. *See id.* at 219 (citing cases). For these reasons, Judge Garth agreed with the defendants' position that the suit:

> is precluded by Pennsylvania's carefully considered statutory dissenters' rights scheme under which a dissenting shareholder may bring an injunctive action alleging fraud or fundamental unfairness to prevent a merger before it takes place, but may not sit on its rights, allow the merger to proceed, and then seek to evade the statutory appraisal remedy.

*Mitchell,* 656 F.3d at 219 (Garth, J., dissenting) (quoting Brief for Appellees in *Mitchell,* 656 F.3d 201, at 17). Thus, as the dissent understood Section 1105, the statute extinguishes common law causes of action at the time a merger occurs, and the express exception for "fraud or fundamental unfairness" should be given effect only where legal proceedings are commenced prior to the merger transaction. *See id.* at 220. In Judge Garth's judgment, other jurisdictions' policy assessments have no place in the salient legal analysis. *See id.* at 220–21.

The defendants sought rehearing, and the Governor of Pennsylvania and several business groups moved for leave to file supportive *amicus* briefs. The Governor expressed particular concern that the Third Circuit had interpreted the BCL's provisions relating to dissenting shareholders' rights in a manner inconsistent with *Jones.* He found it troubling that resolution of this significant corporate law issue might depend on whether a litigant seeks redress in federal or state court. Accordingly, he urged the Third Circuit to grant rehearing and certify a question of law to this Court.

The Third Circuit accepted this invitation, *see Mitchell Partners, L.P. v. Irex Corp.,* 660 F.3d 709 (3d Cir.2011), and this Court granted certification, *see Mitchell Partners, L.P. v. Irex Corp.,* 614 Pa. 686, 39 A.3d 990 (2012) (per curiam). As framed by the Third Circuit, the certified issue is:

> Does 15 Pa.[C.S.] § 1105, providing for appraisal of the value of the shares of minority shareholders who are

"squeezed out" in a cash-out merger[,] preclude all other post-merger remedies including claims of fraud, breach of fiduciary duty, and other common law claims[?]

Petition for Certification of Question of Law, at 7; *Mitchell,* 614 Pa. 686, 39 A.3d 990. We did not require briefing anew; hence, we look to the submissions made to the Third Circuit.

The arguments that Mitchell has presented mirror the Third Circuit's opinion, which credited Mitchell's position. Obviously, Mitchell strongly emphasized the *Herskowitz* case. Mitchell contended that the district court's distinction based on the timing of merger claims (*i.e.,* pre-versus post-merger) is found nowhere in *Herskowitz,* and is contrary to *Jones* and fundamental logic. Mitchell also pointed to Delaware jurisprudence as reflecting an appropriate analogue to the BCL.

Presumably on account of its focus on a favorable Third Circuit decision in arguments made to that tribunal, Mitchell's arguments devoted modest attention to principles of statutory interpretation pertaining under Pennsylvania law. Mitchell did observe, however, that the title to Section 1105 is "Restriction on *equitable relief,*" 15 Pa.C.S. § 1105 (emphasis added), suggesting that the statute is intended to serve only as a restriction on the circumstances in which shareholders may enjoin and unwind a merger. *See* 1 Pa.C.S. § 1924 (indicating that headings may be referenced as a guide in determining legislative intent"). According to Mitchell, Section 1105 in no way purports to extinguish traditional common law remedies against majority shareholders, where such interest holders have violated their fiduciary duties to the minority. Mitchell explained:

> Otherwise stated, the purpose of 15 Pa.C.S.A. §§ 1105 and 1571 *et seq.* is to give the corporation assurance that (absent fraud or fundamental unfairness) a merger will not be unwound years after its consummation in an action by minority shareholders. This purpose is different from permitting minority shareholders to pursue claims for money damages against insider/majority shareholders who have abused their positions of trust and breached a separate duty owed by them to minority shareholders. The two remedies

> are complementary, not mutually exclusive. That is what *Herkowitz* [*Herskowitz*] recognized, and held.

Brief for Appellant in *Mitchell,* 656 F.3d 201, at 34. Additionally, Mitchell viewed the extinguishment of common law remedies as contrary to the rule of strict construction applicable to statutes limiting the jurisdiction of the courts. *See* 1 Pa.C.S. § 1921; *accord In re Jones & Laughlin Steel Corp.,* 263 Pa.Super. 378, 388, 398 A.2d 186, 191 (1979) ("In other words, if the legislature's intention to limit jurisdiction is not clear, we should construe the act in question as imposing no limitation.").

Regarding *Jones,* Mitchell maintained that it was merely "a decision about the jurisdiction (or lack thereof) of an appraisal court to unwind a merger." Brief for Appellant in *Mitchell,* 656 F.3d 201, at 36; *accord Herskowitz,* 857 F.2d at 186 ("The holding of [*Jones* ] is only that an appraisal court lacks jurisdiction to consider the fairness of the underlying merger."). As such, it was Mitchell's main contention that the decision does not foreclose traditional common law damage remedies against insiders and majority interest holders who abuse their positions of trust.

Mitchell also pointed out a questionable result of the district court's position, in that the timing of the filing of a lawsuit relative to the merger would control its viability. Mitchell explained:

> Under the district court's logic, if Mitchell had filed its instant lawsuit even one minute before the merger vote ..., its common law claims against the insiders would not be barred. However, had it waited until one minute after that merger vote, it surrendered all its common law claims. ... [N]othing in *Herskowitz* or [*Jones* ] supports this construction; it is totally illogical. And it provides insiders who abuse their positions with precisely the "shield for such misconduct" that *Herskowitz* holds is antithetical to Pennsylvania law. The jurisdiction that has had the most experience with this issue—Delaware's state courts—has repeatedly held that, not only does the appraisal statute *not*

bar common law claims for breach of fiduciary duty, but that discovery in the appraisal proceeding often *leads to* the information that causes a breach of fiduciary duty claim to be filed.

Brief for Appellant in *Mitchell*, 656 F.3d 201, at 44 (emphasis in original).

The defendants' position, on the other hand, remained that Section 1105's statutory appraisal remedy is exclusive and that the statute's "fraud or fundamental unfairness" exception is limited to the pre-merger timeframe. According to the defendants, the Pennsylvania General Assembly carefully crafted the limitation on post-merger remedies to protect management decisions and attract business to the Commonwealth. *See, e.g.*, Brief for Appellants in *Mitchell*, 656 F.3d 201, at 16 ("Appellant incorrectly understands Pennsylvania's carefully balanced statutory procedure, which was enacted as part of a deliberate legislative decision both to promote corporate flexibility and certainty and to provide greater protection to directors and officers[.]"). The defendants additionally argued that, in *Jones*, this Court addressed the antecedents to Section 1105 and instructed that only statutory appraisal is permitted post-merger. They asserted, moreover, that Mitchell has sought to confuse this reasoning by relying almost entirely on an aggressive reading of a single case—*Herskowitz*—in which the lawsuit in question was filed prior to the merger. The defendants reasoned that *Herskowitz* is readily distinguishable on that basis, and hence, has no bearing on the range of remedies available in the post-merger context.

Furthermore, the defendants posited that Delaware law is not an appropriate polestar for interpreting Pennsylvania law, particularly since Delaware's appraisal statute does not make valuation an exclusive remedy. They developed that there are many ways in which Pennsylvania corporate law differs from that of Delaware and urged the court to honor the Pennsylvania Legislature's policy choice to limit the scope of post-merger remedies, thus affording strong protection to management discretion in critical business decision-making.

■ This matter presents an issue of statutory interpretation, in which our task is to determine the will of the General Assembly using the language of the statute as our primary guide. *See* 1 Pa.C.S. § 1921. As noted, Section 1105 indicates that the remedies it provides shall be exclusive "[a]bsent fraud or fundamental unfairness." 15 Pa.C.S. § 1105. By straightforward implication, this language conveys that, where fraud or fundamental unfairness are present, the statutory remedies are not made to be exclusive.

Exceptions to exclusivity of the appraisal remedy based on fraud, illegality, or fundamental unfairness are common in the state corporate law of many jurisdictions and, indeed, are reflected in the Model Business Corporations Act in current and prior formulations, *see* MODEL BUS. CORP. ACT § 13.40(d) (2007). *See generally* WILLIAM MEADE FLETCHER, 12B FLETCHER CYC. CORP. § 5906.30 (2012) ("[U]nder the 1969 Model Business Corporation Act, and in most jurisdictions, equitable relief for fraudulent or illegal transactions is not foreclosed." (footnotes omitted)); 18A AM.JUR.2D CORPORATIONS § 687 (2012) ("[I]t is generally recognized that the statutory remedy [of appraisal] does not preclude equitable relief in the case of fraud, illegality, oppression, or unfairness; the appraisal remedy is exclusive only if that proceeding will provide dissenting shareholders with sufficient recovery of value of their shares."). Such exceptions obviously reflect a policy concern that, despite the desire to authorize and streamline fundamental changes beneficial to majoritarian interests, the appraisal remedy may be inadequate to vindicate the essential interests of minority shareholders where they encounter wrongful conduct. Their application is also consistent with the scrutiny usually required, under corporate law, with respect to conflict transactions.[6]

6. Before modern innovations to corporate law, shareholders' unanimous consent was required to permit fundamental changes such as a consolidation or merger. *See* 12B FLETCHER CYC. CORP. § 5906.10. As this stricture was removed, statutory appraisal procedures were devised and implemented as a way to address the interests of dissenting shareholders who did not wish to participate in the surviving entity. *See id.* As "cash-out," "freeze-out," or "squeeze-out" strategies gained legitimacy, appraisal procedures provided a judicial forum for deter-

The primary impediment raised to our enforcement of Section 1105 as written is the *Jones* decision, since the *Jones* Court pronounced that the statutory appraisal remedy was an exclusive one. *See Jones*, 488 Pa. at 534, 412 A.2d at 1104. We have emphasized many times, however, that a decision is to be read against its facts and will not be applied uncritically to subjects which were not directly before the Court. *See, e.g., Six L's Packing Co. v. WCAB (Williamson)*, 615 Pa. 615, 630 & n. 11, 44 A.3d 1148, 1158 & n. 11 (2012). As the Third Circuit aptly developed, *Jones* arose in the context of an appraisal proceeding and was concerned with the jurisdiction of the appraisal court. *See Jones*, 488 Pa. at 529, 412 A.2d at 1102. Accordingly, like our federal colleagues, we also conclude that *Jones* is not controlling in the context of Mitchell's distinct action pursued in federal court.

We note that, at oral argument, the defendants highlighted historical notes to Section 1105, which indicate that the provision is substantially a reenactment of the predecessor statutes before the Court in *Jones*. *See* 15 Pa.C.S. § 1105 (Historical and Statutory Notes, Official Source Note—1988). Since *Jones* refused to sanction a challenge to the validity of a merger supported by allegations of fraud, the argument goes that a cohesive fraud-or-fundamental-unfairness exception cannot pertain in the post-merger timeframe after *Jones*.

We recognize that enforcement of the fraud-or-fundamental-unfairness exception on its terms does appear to be inconsistent with at least one facet of the previous law as interpreted in *Jones* (since, were the exception to be enforced consistently,

mining fair valuation in these scenarios as well. *See* 1 OPPRESSION OF MIN. SHAREHOLDERS AND LLC MEMBERS § 5:33 (2012); Robert B. Thompson, *The Case for Iterative Statutory Reform: Appraisal and the Model Business Corporation Act*, 74–WTR LAW & CONTEMP. PROBS. 253, 254 (2011) (explaining that as the "liquidity use of appraisal has diminished to the point of invisibility, appraisal has grown dramatically in a different transactional context where shareholders are guaranteed liquidity for their investment, but need protection against the conflict of interest of those in control of the corporation who are setting terms at which the minority shareholders must exit."). The need for neutral, judicial scrutiny arose, in particular, since valuation by majoritarian interests in cash-out scenarios presents an obvious conflict of interest. *See id.* at 267.

the making of colorable allegations of fraud in *Jones* would have overcome exclusivity even in the statutory appraisal context). Nevertheless, the specific admonition that "[a]bsent fraud or fundamental unfairness, the rights and remedies [subsuming appraisal] shall be exclusive" did not appear in the statutory scheme prior to the addition of Section 1105 in 1988 (almost a decade after *Jones*). In view of this specific language—whatever validity *Jones* may retain after the subsequent recodification of the appraisal remedy—we decline to extend the decision's holding outside the context of determining the jurisdiction of a statutory appraisal court. To the extent there is tension between our interpretation and historical notations suggesting consistency between Section 1105 and prior law, we conclude that the language of the actual statutory text should be accorded predominance.

The above is not to say, however, that Section 1105 does not serve as a restriction on non-appraisal proceedings. In this regard, we believe that the General Assembly did intend for the notion of exclusivity—as modified by the exception for fraud or fundamental unfairness—to curtail actions outside the appraisal context. Such qualified preclusion is suggested by the language of exclusivity appearing in Section 1105 and is supported by the general policy of reducing the burdensomeness of fundamental corporate changes. *Cf. Stepak v. Schey*, 51 Ohio St.3d 8, 553 N.E.2d 1072, 1075 (1990) (observing that limiting dissenters' remedies to fair appraisal may forestall "vexatious lawsuits by those whose goal is simply to receive more money for their stock"); *see also Cathedral Estates, Inc. v. Taft Realty Corp.*, 157 F.Supp. 895, 897 (D.Conn.1954) (recognizing the desirability of legislation permitting small corporate minorities to be bought out at a fair price fixed by appraisal, so that "potentially troublesome small shareholders [can] be properly compensated for their holdings and the majority enabled thereby to remove the present handicap to free exercise of judgment in management"), *aff'd* 228 F.2d 85 (2d Cir.1955).

In light of such purposes, we also take this opportunity to observe that the fraud or fundamental unfairness exception

may not be invoked lightly. For example, the Legislature has made clear that the exception does not apply merely by virtue of the character of a cash-out transaction. *See* 15 Pa.C.S. § 1105 ("Structuring a plan or transaction for the purpose or with the effect of eliminating or avoiding the application of dissenters rights is not fraud or fundamental unfairness within the meaning of this section."). It is also well established elsewhere, and should pertain in Pennsylvania, that mere inadequacy in price is not sufficient to implicate the exception. *See generally* 15 FLETCHER CYC. CORP. § 7165 ("Allegations of fraud should be scrutinized to make sure the conflict is not merely one concerning valuation, which is properly handled in an appraisal proceeding."); JAMES D. COX AND THOMAS LEE HAZEN, 4 TREATISE ON THE LAW OF CORPORATIONS § 22.27 (3d ed. 2011) ("The courts are fairly consistent in refusing to allow an exception to the appraisal statute when the sole complaint is that the merger does not offer a fair price for the dissent's shares."). Plainly, appraisal is intended as the usual remedy in the absence of exceptional circumstances.

In summary, in response to the certified question, Section 1105 precludes post-merger remedies other than appraisal only in the absence of fraud or fundamental unfairness.[7]

This matter is returned to the Third Circuit.

Justice ORIE MELVIN did not participate in the decision of this case.

Chief Justice CASTILLE, Justices BAER, EAKIN, TODD, and McCAFFERY join the opinion.

Justice BAER files a concurring opinion.

Justice BAER, concurring.

I join the Majority Opinion in its entirety, and write only to expand on the Majority's observation that mere inadequacy in

---

7. It is beyond the scope of the certified question in this case to comment further on the application of this determination in the federal action. *See generally* 4 TREATISE ON THE LAW OF CORPORATIONS § 22.27 ("The meaning of 'fraud,' 'illegality,' and other such types of misconduct that prevent the appraisal statute from being the shareholder's exclusive recourse is fairly much decided on a case-by-case basis.").

price is not sufficient to implicate the fraud or fundamental unfairness exception contained in Section 1105, 15 Pa.C.S. § 1105. Maj. Op. at 435–37, 53 A.3d at 47–48. Although this section contemplates remedies outside of the appraisal action pursuant to this exception, as the Majority observes, it is not to be invoked lightly. *Id.*

The appraisal remedy provided in Sections 1571–1580, 15 Pa.C.S. § 1571, is designed to protect dissenting shareholders by valuing their shares, *see O'Connor Appeal,* 452 Pa. 287, 304 A.2d 694 (1973), and is generally the exclusive remedy available to such shareholders. 15 Pa.C.S. § 1105. Section 1105 provides, however, by negative implication, that where there is fraud or fundamental unfairness, the appraisal remedy is not exclusive. 15 Pa.C.S. § 1105 ("Absent fraud or fundamental unfairness, the rights and remedies so provided shall be exclusive.").

This exception is not to be invoked to compensate financial unfairness. *See Barter v. Diodoardo,* 771 A.2d 835, 841 (Pa.Super.2001) ("[F]inancial unfairness is not the equivalent of fraud or fundamental unfairness, as the Pennsylvania Business Corporation Law, by granting dissenting shareholders the ability to demand an appraisal, *see generally* 15 Pa.C.S.A. §§ 1571–1580, contemplates that a shareholder may be inadequately compensated by the terms of a merger.") (citing 15 FLETCHER CYC. CORP. § 7160.50 ("inadequacy of price, in and of itself, does not constitute fraud or illegality")). In this regard, financial unfairness will be addressed and remedied in the appraisal proceeding. *See Barter,* 771 A.2d at 841 (providing that financial unfairness is an issue for the appraisal court).

Cognizant of the potential that litigants may attempt to invoke the fraud or fundamental unfairness exception on a regular basis as an alternative avenue to seek redress for pedestrian claims, which do not involve fraud or fundamental unfairness, I, like the Majority, view the exception as a narrow one, and would add that it requires the litigants to demonstrate to the trial court, as gatekeeper, that their alleged harm results from fraud or fundamental unfairness and that it cannot be compensated through the appraisal proceeding pro-

vided in Sections 1571–1580. It is only when they can make such a showing that the exception is available to remedy fraud or fundamental unfairness.