J-S66002-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| DELIA MCCOY-MCMAHON, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | |
| v. | |
| J. CARLTON GODLOVE, II, BRIAN R. KELLY, PATRICK M. MCCOY, LEWIS J. MCCOY, JR., AND SPOTTS, STEVENS AND MCCOY, INC., | |
| Appellees | No. 542 MDA 2014 |

Appeal from the Order Entered February 24, 2014
In the Court of Common Pleas of Berks County
Civil Division at No(s): 08-14641

BEFORE:  BENDER, P.J.E., SHOGAN, J., and MUSMANNO, J.

MEMORANDUM BY BENDER, P.J.E.:          **FILED NOVEMBER 25, 2014**

Appellant, Delia McCoy-McMahon (McMahon), appeals from an order granting summary judgment in favor of Appellees, J. Carlton Godlove II, Brian R. Kelly, Patrick M. McCoy, Lewis J. McCoy, Jr., and Spotts, Stevens and McCoy, Inc. (SSM), in a shareholder action initiated by McMahon against Appellees.  After careful review, we affirm.

The trial court summarized the applicable facts as follows:

[T]his dispute arose out of the financial and organizational activities of the closely-held corporation operating under the legal name Spotts, Stevens, & McCoy Inc., hereinafter SSM, which deals primarily in the business of advanced civil, municipal, and environmental engineering services.  The primary actions aggrieved involve a statutory merger with another corporate entity, Wyomissing Holdings, Inc. (hereinafter WHI), and the use of corporate assets to fund bonus pools for the SSM's executive officers, the expenditure of corporate assets on

furnishings. It is important to note that this is not a case where the actual actions taken by SSM and its directors are at issue, rather it is the legal colorization of [Appellees'] actions and intentions which are contested. While the crux of the argument may seem that the dispute is purely a business issue, it is apparent to the Court that there is a familial dispute as well. While both SSM and WHI operate under the corporate governance structures, it is abundantly clear that both corporations were primarily family operated businesses. Both SSM and WHI are closely-held, almost exclusively by members of the McCoy family, of which Plaintiff, Delia McCoy-McMahon, and [Appellees] are a part. While [] [Appellees] served as the officers and directors of [SSM], and as such largely administered the day-to-day operations of the company, [McMahon] had absolutely no involvement with the operation of the company.

[McMahon] alleges twelve counts of tortious conduct, ten of which are clearly stockholder derivative claims. These ten [c]ounts, numbered I-III and VI-XII respectively, incorporate a myriad of grievances ranging from breach of fiduciary duty to fraud. Count V is asserted as a direct claim and is based on a theory of breach of fiduciary duty stemming from an unlawful freeze-out merger. In regards to the remaining [c]ount, it is unclear whether [c]ount IV is assert[ing] a direct or derivative claim. Regardless, [c]ount IV is essentially a duplicate of [c]ount V, in that the primary grievance stems from the alleged organized unlawful minority freeze-out merger. While the lack of clarity as to the theory of standing under which [c]ount IV is brought certainly serves to further procedurally discompose this case, the Court finds that a determination as to whether [c]ount IV is a direct or derivative is entirely ancillary, as the Court feels it can be aptly disposed [of] under either theory.

This litigation was initiated October 31, 2008 and, through two distinct iterations, has been presented to multiple judges, both in the Berks County Court of Common Pleas and the Pennsylvania Superior Court[,] as well as in the U.S. District Court for the Eastern District of Pennsylvania. The case has manifested itself through two separate suits, the October 31, 2008 [c]omplaint which is now before the Court, and a January 5, 2009 [a]ppraisal [a]ction. Upon the filing of the 2008 [c]omplaint, [Appellees] attempted to remove the case to the U.S. District Court for the Eastern District of Pennsylvania which, after nearly two years of litigation, was ultimately unsuccessful.

During the pendency of the [f]ederal action, the aforementioned [a]ppraisal [a]ction was initiated in the Berks County Court of Common Pleas. That case was filed pursuant to [McMahon]'s statutory rights as a dissenting shareholder to a corporate merger, and solely for the purpose of determining the fair value of the corporation's shares at the time of the merger. [McMahon] petitioned this Court to delay the [a]ppraisal proceedings until the culmination of the initial civil action, which this Court denied. On appeal, the Superior Court affirmed this Court's decision to deny [McMahon]'s request for the delay of the [a]ppraisal proceedings. The [a]ppraisal action has since culminated. In the [a]ppraisal [a]ction's final determination, this Court concluded that the value assessed by [Appellees] was fair and adequate compensation for the divested minority shares in the corporation.

Upon the [f]ederal [c]ourt[']s remand of the initial 2008 [c]omplaint to the Berks County Court of Common Pleas[,] the [p]arties proceeded to trade [p]reliminary [o]bjections and [a]mended [p]leadings for approximately two years. Finally, in late 2012 the [p]arties had filed a complete set of [p]leadings. From late 2012 until present[,] the parties have engaged in limited discovery, including document requests and the deposition of [McMahon]. Although the case has been pending for nearly six years, little discovery has actually taken place, particularly on [McMahon]'s part, despite the Court[']s affording both parties tremendous leave to do so.

Trial Court Opinion (TCO), 6/4/14, 1 – 3.

On February 24, 2014, the trial court entered an order granting Appellees' motion for summary judgment. McMahon filed a timely notice of appeal and a timely Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal. She now presents the following questions for our review:

I.   Do counts IV and V of the amended complaint succeed as a matter of law because all "reasons" purported by Appellees for the freeze-out merger are mere pretext contrived by the Appellees to hide their/its only reason – to eliminate Appellant from the corporation so the

> Appellees could continue the business for themselves/itself and to circumvent liability for the numerous actions taken and decisions made by these self-interested Appellees?
>
> II.  Should the Superior Court reverse the trial court's granting Appellees' motion for summary judgment related to counts I, II, III, IV, V, VI, VII, VIII, IX, X and XII because Appellant has maintained standing to assert these claims?

McMahon's brief at 4.

Our standard of review with regard to the granting of a motion for summary judgment is well-settled:

> "Our scope of review of a trial court's order granting or denying summary judgment is plenary, and our standard of review is clear: the trial court's order will be reversed only where it is established that the court committed an error of law or abused its discretion." ***Universal Health Services, Inc. v. Pennsylvania Property and Casualty Insurance Guaranty Assoc.***, 884 A.2d 889, 892 (Pa. Super. 2005) (citation omitted).
>
> > The entry of summary judgment is proper whenever no genuine issue of any material fact exists as to a necessary element of the cause of action. The moving party's right to summary judgment must be clear and free from doubt. We examine the record, which consists of all pleadings, as well as any depositions, answers to interrogatories, admissions, affidavits, and expert reports, in a light most favorable to the non-moving party, and we resolve all doubts as to the existence of a genuine issue of material fact against the moving party.
>
> ***LJL Transp., Inc. v. Pilot Air Freight Corp.***, 599 Pa. 546, 962 A.2d 639, 647 (Pa. 2009) (citations omitted).

***Krapf v. St. Luke's Hospital***, 4 A.3d 642, 649 (Pa. Super. 2010), *appeal denied*, 34 A.3d 831 (Pa. 2011).

Moreover, our Supreme Court has stated:

> Rule 1035 also provides that "[w]hen a motion for summary judgment is made and supported as provided in this rule, an

- 4 -

adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If he does not respond, summary judgment, if appropriate, shall be entered against him." Pa.R.C.P. 1035(d). Therefore, where a motion for summary judgment has been made and properly supported, parties seeking to avoid the imposition of summary judgment must show by specific facts in their depositions, answers to interrogatories, admissions or affidavits that there is a genuine issue for trial. *See Overly v. Kass*, 382 Pa. Super. 108, 554 A.2d 970 (1989), and *Tom Morello Construction Co., Inc. v. Bridgeport Federal Savings and Loan Assn.*, 280 Pa. Super. 329, 421 A.2d 747 (1980).

*Marks v. Tasman*, 589 A.2d 205, 206 (Pa. 1991).

We begin by addressing McMahon's second argument, regarding her standing to pursue derivative shareholder claims against Appellees. Notwithstanding McMahon's claim that the trial court dismissed the eleven claims she enumerates in her brief for lack of standing, it appears that the trial court instead dismissed ten claims on this basis. These were numbered in McMahon's complaint as counts I, II, III, VI, VII, VIII, IX, X, XI, and XII. In its opinion, the trial court stated it found that these claims were derivative stockholder claims, and that counts IV and V were construable as direct stockholder claims.

A derivative claim is brought on behalf of a corporation; in such an action, "the gravamen of the complaint is injury to the corporation, or … to recover assets for the corporation or to prevent dissipation of its assets." *Hill v. Ofalt,* 85 A.3d 540, 549 (Pa. Super. 2014). Thus, a derivative claim must be brought by a shareholder of a corporation. Pa.R.C.P. § 1506 states:

- 5 -

(a) In an action to enforce a secondary right brought by one or more stockholders or members of a corporation or similar entity because the corporation or entity refuses or fails to enforce rights which could be asserted by it, the complaint shall set forth:

(1) that each plaintiff is a stockholder or owner of an interest in the corporation or other entity.

McMahon concedes that the merger became effective on October 27, 2008. The terms of that merger divested McMahon of her shares of stock in SSM. McMahon filed a writ of summons on October 31, 2008, and a complaint on November 25, 2008. Accordingly, we are constrained to conclude that the trial court did not commit an error of law when it granted Appellees summary judgment with regard to these claims, as McMahon was without standing to bring a derivative shareholder action.

In support of her argument that she had standing to pursue this action, McMahon relies on ***Mitchell Partners, L.P., v. Irex Corp.***, 53 A.2d 39 (Pa. 2012). However, the ***Mitchell*** court did not address the issue of standing. Rather, that case involved the interpretation of a particular statute, 15 Pa.C.S. § 1105, which dictates what types of equitable relief are available to shareholders, and ***Mitchell*** is not controlling with regard to the instant case.

Likewise, McMahon argues that in ***Drain v. Covenant Life Ins. Co.***, 685 A.2d 119 (Pa. Super. 1996), this Court rejected "a strict construction of Rule 1506 of the Pennsylvania Rules of Civil Procedure." McMahon's brief at 51 – 52. We do not agree with this analysis. As noted *supra*, derivative

stockholder suits must be brought by stockholders. The **Drain** Court held that if a stockholder is divested of their shares during the pendency of litigation, that shareholder nonetheless retains standing to pursue their derivative claim. **Id.** at 126 – 127. Thus, **Drain** does not apply to the circumstances of the instant case, where McMahon was divested of her shares *prior to* the time she filed her complaint. Accordingly, we conclude the trial court did not err when it granted Appellees' motion for summary judgment with regard to McMahon's derivative claims, as there was no genuine issue of material fact with regard to her lack of standing to raise them.

We now address McMahon's argument concerning her direct shareholder claims; namely, that the merger at issue was unlawful. McMahon raises a number of specific objections to the merger, which we will address in turn.

First, McMahon argues that she is due equitable relief as the merger was a prohibited "freeze out" merger, and that Appellees' motivation for the merger was to remove her as a shareholder. Our courts have recognized that "it is a violation of the majority shareholders' fiduciary duty to minority shareholders to freeze out the minority for the sole purpose of continuing the business for the benefit of the majority." **In re Jones & Laughlin Steel Corp.**, 412 A.2d 1099, 1102 (Pa. 1980).

McMahon states that the "'reasons' purported by Appellees for the freeze-out merger are mere pretext contrived by the individual Appellees…." McMahon's brief at 24. We note that in construing Appellees' motivation for the merger as "pretext," McMahon has conceded that Appellees offered some independent rationale for the merger. Moreover, as noted by the trial court:

> Despite [] [McMahon's] contention that the sole purpose of the merger was to remove her as a shareholder, [Appellees] have come forth with four legitimate reasons for the merger: (1) to remove a shareholder working as a consultant for one of SSM's major competitors; (2) to remove as shareholders former employees who were working or might eventually go to work for competitors while continuing to receive SSM's confidential information; (3) to eliminate the disparity between the limited number of employees with shares and the overwhelming number of employees without; and (4) to position the [c]ompany for potential future tax savings. *Godlove Affidavit* ¶30. Further, during her deposition [McMahon] admitted that at least three of the proffered business reasons were valid business reasons. *Pl.Dep.* at 211-212, 313. Finally, [McMahon's] evidence consists entirely of an unauthenticated handwritten note, purportedly created at an SSM board meeting regarding the merger, which read only "DeDe ([McMahon's] nickname)—freeze out?". However, even if the note was assumed to be trustworthy and admissible, it is apparent to the Court that in light of the dearth of other substantive facts and [Appellees] additional justifications for executing the merger, that [McMahon's] facts in support of an unlawful freeze-out merger are insufficient to deprive [Appellees] from summary judgment in their favor.

TCO at 7. Given the reasons provided by Appellees for the merger, McMahon's concessions that these reasons were legitimate business reasons, and the absence of evidence offered to the contrary by McMahon, the record does not support the contention that there was a genuine issue of material

fact with regard to McMahon's claim that the sole purpose for the merger was to remove her as a shareholder. Therefore, we conclude that the trial court did not err in granting summary judgment for Appellees.

Next, McMahon argues that Appellees' actions constituted oppressive conduct, as they defeated her reasonable expectation that she would not be "arbitrarily excluded from gaining a return from the potential future sale of [SSM]," and the "loss of any future gains that could have been experienced when [SSM] sold its stock for 40 to 50 dollars a share." McMahon's brief at 27.

15 Pa.C.S. § 1767(a)(2) permits the appointment of a custodian in a closely held corporation where "the directors or those in control of the corporation have acted illegally, oppressively or fraudulently to one or more [shareholders]." In addition, 15 Pa.C.S. § 5981(2) provides for the involuntary winding up and dissolution of a non-profit corporation where the acts of the directors are "illegal, oppressive or fraudulent." In the instant case, however, McMahon seeks neither the appointment of a custodian, nor the dissolution of a non-profit. Moreover, while McMahon alleges that her expectation of receiving nearly five to ten times the amount she was paid for her shares is reasonable, at her deposition, McMahon conceded that when the merger occurred there was not a buyer willing to pay such an amount for SSM's shares. Consequently, we cannot conclude a genuine issue of material fact existed with regard to this issue.

McMahon also argues that the merger was procedurally improper because the Appellees "failed to submit the decision to organize" the merger "to SSM's shareholders for approval." McMahon's brief at 29. However, as noted by the trial court, "pursuant to 15 Pa.C.S. § 1924(b)(1)(ii) and 15 Pa.C.S. § 2538(b)(3), where a corporate entity acquires 80% or more of the shares of another corporation, as is the uncontroverted case here, the approval of the non-interested shareholders is not required." TCO at 6. McMahon argues that section 8.04 of SSM's bylaws nonetheless required a shareholder vote. According to this section, no shareholder vote is required if a "contract or transaction is fair as to the corporation as of the time it is authorized, approved or ratified by the board of directors or shareholders." Bylaws of SSM § 8.04(a)(3) (appended to SSM's motion for summary judgment of 10/11/13 as exhibit G). McMahon does not suggest how the merger was unfair to the corporation; as noted *supra*, during the pendency of this litigation, she conceded that the reasons for the merger articulated by SSM were legitimate business reasons. We conclude that the trial court did not err in finding there was no genuine issue of material fact regarding the procedural propriety of the merger.

Finally, McMahon claims that the "totality of the circumstances" demonstrate that "fraud or fundamental unfairness" was involved in the merger transaction. McMahon's brief at 35, 36. McMahon claims that Appellees acted, through means such as expediting the completion of SSM's

business valuation, to preclude her from exercising her rights as a shareholder. As stated by the trial court,

> While [McMahon] seeks broad equitable relief[,] the Pa. B.C.L. places stringent statutory limitations on the Court's ability to grant equitable relief. Pursuant to 15 Pa.C.S. § 1105, "in the absence of fraud or fundamental unfairness, an injunction against any proposed plan or amendment of articles authorized under any provision of this subpart, nor any right to claim the right to valuation and payment of the fair value of his shares because of the plan or amendment, except that he may dissent and claim such payment if and to the extent provided in Subchapter D of Chapter 15 (relating to dissenters rights)." 15 Pa.C.S. § 1105. The rule goes on further to provide that "Absent fraud or fundamental unfairness, the rights and remedies so provided shall be exclusive." *Id.* Indeed, in *Mitchell Partners, LLC v. Irex Corp*. the Pennsylvania Supreme Court reiterated the principles proscribed by 15 Pa C.S. § 1105 and emphasized that "the fraud or fundamental unfairness exception may not be invoked lightly." *Mitchell Partners, LLC v. Irex Corp.*, 53 A.3d 39, 47 (Pa. 2012). … *Barter v. Diodoardo* defined unfairness as "something more than an unfairness in the price to be paid the dissenting shareholders for their shares in order for the court to enjoin the merger…. The unfairness must result from nondisclosure or misrepresentation concerning some essential [*sic*] of the merger itself. The minority shareholders are entitled to disclosure of all material facts in an atmosphere of complete candor." *Barter v. Diodoardo*[,] 771 A.2d 835, 840 (Pa. Super. 2001). Despite boilerplate allegations of impropriety and fraud, [McMahon] does not assert specific facts to indicate to the Court unfairness of any kind, only a dissatisfaction of the buy-back price. While [McMahon] alleges that some kind of misrepresentation or fraud occurred, she can provide nothing in the way of specific substantive proof [of] any such malfeasance. Under the *Mitchell* and *Barter* standards, [McMahon's] argument is insufficient to justify precluding [Appellees] from [s]ummary [j]udgment, let alone awarding [McMahon] her requested equitable remedy.

TCO at 6. We agree with the trial court's analysis. Accordingly, we conclude that summary judgment on this claim was not error.

Order affirmed.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 11/25/2014